# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **FRANK LAMONT ROBINSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CV-10-BE-1538-NE** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

### I. Introduction

On June 06, 2006, the claimant, Frank Robinson, applied for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. (R. 100, 106). The claimant alleges disability, commencing on the amended date of December 31, 2005, because of pancreatitis, bipolar disorder, lower back problems, and depression. (R. 113, 129). The Commissioner denied the claims on September 06, 2006. (R. 73, 78). The claimant filed a timely request for a hearing before an Administrative Law Judge on November 05, 2006, and the ALJ held a video hearing on June 27, 2008. (R. 83, 9). In a decision dated July 23, 2008, the ALJ found that the claimant was not disabled as defined by the Social Security Act, and, thus, was ineligible for supplemental security income. (R. 6). On April 30, 2010, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1). The claimant has exhausted his administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court affirms

the decision of the Commissioner.

## II. Issues Presented

The claimant presents three issues for review: first, whether the ALJ properly discredited a report from his treating physician; second, whether the ALJ correctly applied the law to evaluate the claimant's alcoholism and substance abuse; and third, whether the ALJ properly applied the Eleventh Circuit's three-part pain standard.

## III. Standard of Review

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if he applied the correct legal standards and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2006); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that substantial evidence supports. Substantial evidence is more than a mere scintilla. It means evidence that a reasonable mind could accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court not only must look to the parts of the record that support the decision of the ALJ but also must view the record in its entirety and take account of evidence that detracts from the evidence upon which the ALJ

2

relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. Legal Standard

A person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2006). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920 (2011).

In evaluating the opinions and reports of physicians, the ALJ must give "substantial or considerable weight" to the opinion of a treating physician unless good cause is shown to the contrary. *Crawford v. Commissioner*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). An ALJ must articulate specific reasons supported by substantial evidence for not giving the opinion of a treating physician controlling weight. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

An individual suffering from drug addiction or alcoholism is only disabled according to the Social Security Act if the addiction is not "a contributing factor material to the

Commissioner's determination of disability." 42 U.S.C. § 423(d)(2)(C) (2006). Drug addiction or alcoholism is not "a contributing factor material to the determination of disability" only if the claimant would still be disabled if the claimant stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(1) (2011).

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529 (2011).

## V. Facts

The claimant completed school through the eleventh grade, has a GED, and was forty-one years old at the time of the administrative hearing. (R. 40). In the past, he has worked as a garbage collector, landscaper, warehouse worker, and retail stocking clerk. (R. 152-59). The claimant alleged he was unable to work as of December 31, 2005 because of pancreatitis, bipolar disorder, lower back problems, and depression. (R. 113, 129).

### *Physical Limitations*

On August 08, 2002, the claimant suffered an injury from an automobile accident. (R. 41). After receiving a MRI, treating physician Dr. Murray, a spine and neurosurgery specialist, diagnosed the claimant with rib fractures, right ankle fractures, L2 to L5 transverse process fractures, and compression of the right vertebral body of L5. (R. 201). Three weeks later, on

4

September 09, 2002, Dr. Murray reported that the claimant's back was "doing well with only minimal discomfort" and that the claimant could drive, but should not perform any heavy lifting. (R. 200). On September 19, 2002, treating physician Dr. Michael Miller, an orthopaedic surgeon, reviewed the claimant's x-rays, noted that the claimant's ankle was "healing nicely," and referred the claimant for physical therapy. (R. 189). On October 21, 2002, Dr. Murray reported that x-rays revealed solidification of the claimant's spinal fractures. Dr. Murray recommended that the claimant could remove his brace, should begin therapy, and could return to work on December 01, 2002 without restrictions. (R. 199).

Approximately a year and a half later, on May 11, 2004, the claimant once again visited Dr. Murray and reported back pain from bending over while washing his car. Dr. Murray reported that the claimant's fractures were "well healed" and ordered an MRI scan. After reviewing the MRI results on May 27, 2004, Dr. Murray diagnosed the claimant with lumbar radiculopathy (a herniated disk) and disc degeneration at L4-5 and 5-1. (R. 197-98). On July 06, 2004, the claimant returned to Dr. Murray because of a pulled back muscle from a tractor accident at work. Dr. Murray stated the pulled muscle was a separate problem. Because the pain was not radiating, Dr. Murray did not recommend surgery, but did prescribe epidermal steroid injections. Although Dr. Murray requested that the claimant return for a follow-up visit in ten weeks, the record contains no evidence of additional visits. (R. 196).

From April 02, 2005 to April 25, 2005, Crestwood Medical Center hospitalized the claimant for acute pancreatitis. While at the hospital, treating physician Dr. Eghierhua Ugheoke, a gastroenterologist, diagnosed the claimant with acute pancreatitis, a pancreatic pseudocyst, bipolar disorder, and a left pleural effusion (a buildup of fluid in the chest). Dr. Ugheoke

prescribed MS-Contin (a narcotic for pain), Klonopin (a drug used for seizures or panic attacks), Phenergran (a drug used for nausea), and Dilaudid (a pain reliever). (R. 247). The claimant returned to the hospital on June 01, 2005 for a celiac plexus sympathetic block procedure (a nerve block). After the procedure, the claimant reported his pain was completely relieved. (R. 252).

On July 13, 2005, the claimant visited Huntsville Hospital complaining that his pain medicine could not control his abdominal pain. Treating physician Dr. Charles Bradford, a family practitioner, noted the claimant's "exam was not consistent with chronic pain." (R. 298). On December 14, 2005, the claimant returned to the hospital reporting chest pain. Treating physician Dr. James Chandler, an internal medicine specialist, treated him with intravenous pain medicine and sent him home. The following day, the claimant returned to the hospital still complaining of chest pain. Complete blood count, chest x-ray, and CT scan tests were unremarkable. Dr. Chandler prescribed Methadone (a narcotic pain reliever), Lithium (a drug used for bipolar disorder), and Zoloft (a drug used for depression). (R. 367). On January 14, 2006, the claimant returned to the hospital with complaints of chest pain. Treating physician Dr. Bridgette Franey, a family practitioner, diagnosed the claimant with narcotic dependence and alcohol abuse. Tests again revealed no significant abnormalities and Dr. Franey advised the claimant to stop drinking. (R. 472). The claimant returned to the hospital on both March 02, 2006 and June 01, 2006 with the same diagnoses and treatments. On both visits, tests were unremarkable. (R. 564, 652).

On August 11, 2006, Dr. John Lary Jr., an internal medicine consultant, examined the claimant for the Department of Disability Services. Dr. Lary diagnosed the claimant with a pancreatic pseudocyst, recent episode of acute pancreatitis, history of alcoholism, old

6

compression fracture of L5, chronic back pain complaint, and bipolar disorder. Dr. Lary noted that the claimant's "ability to sit, stand, walk, lift, kneel, carry, bend, and squat is impaired," but "his ability to reach, see, hear, speak, understand, and manipulate small objects is unimpaired." (R. 668). As part of the examination, the claimant reported he could wash dishes, do laundry, vacuum, move a kitchen chair, drive, and grocery shop. (R. 672). On April 03, 2007, the claimant once again completed a functional assessment and reported he could take care of his own personal needs and walk more than 100 yards, but could not drive. (R. 988).

On April 03, 2007, the claimant visited the Hunstville Hospital for complaints of severe abdominal pain. Treating physician Dr. Scariya Kumaramangalam, a psychiatrist, reported that the claimant was exhibiting suicidal ideations and was admitted "primarily for safety purposes." Dr. Kumaramangalam diagnosed the claimant with depression, polysubstance abuse, and severe psychosocial issues. (R. 946).

On July 12, 2007, the claimant was incarcerated for possessing prescription drugs without a prescription. (R. 1054). On September 30, 2007, the prison restricted the claimant from standing longer than twenty minutes, lifting more than ten pounds, bending, or squatting. (R. 1085).

*Mental Limitations*

In addition to his physical limitations, the claimant has a history of depression, bipolar disorder, alcoholism, and drug addiction. On February 18, 2005, the claimant checked into Bradford Health Services for alcohol dependence, cocaine abuse, and bipolar disorder. The claimant admitted to drinking ten to twenty beers a day and using cocaine on the weekends. At admission, his Global Assessment of Functioning (GAF) score was 58%; however, by the time

he left it improved to 88%. (R. at 204-05). On April 02, 2005, treating psychiatrist Dr. Phyllis Eason reported the claimant had resumed taking anti-depressant medication and exhibited a positive response. (R. 248).

On July 13, 2005, the claimant visited Huntsville Hospital, tested positive for cocaine use, and admitted to drinking a six-pack of beer a day plus moonshine. (R. 298, 300). On January 14, 2006, Dr. Franey diagnosed the claimant with narcotic dependence and alcohol abuse. (R. 472). On March 6, 2006, the claimant returned to Huntsville Hospital and confessed to "heavy alcohol usage for the past two months." Treating physician Dr. Allan Wilke, a geriatric specialist, diagnosed the claimant with alcohol and substance abuse. (R. 260).

On August 9, 2006, Dr. William McDonald, a psychologist, examined the claimant for the Disability Determination Service. (R. 661). Dr. McDonald diagnosed the claimant with bipolar I disorder, alcohol dependence, and a personality disorder not otherwise specified. He stated that the claimant's "condition should improve significantly if he resumes proper psychiatric care and maintain[s] sobriety. Otherwise, his prognosis is poor." (R. 662). During a mental residual functional capacity examination for the Disability Determination Service on September 06, 2006, Dr. Frank Nuckols, a psychiatrist, concluded that the claimant was not "markedly limited" in any psychological functioning category, was "moderately limited" in seven out of twenty categories, and was "not limited" in the remaining thirteen. (R. 699-701).

On November 13, 2006, the claimant began visiting the Mental Health Center of Madison County (MHC). According to treatment notes, the claimant was irritable, paranoid, and had not been taking his medication. (R. 1030). On September 20, 2006, the claimant once again visited MHC and received a diagnosis of major depressive disorder. (R. 1039). During a visit to MHC

on December 18, 2006, the claimant reported having "a lot of anxiety attacks." (R. 1040). The same day the claimant visited Huntsville Hospital. At the hospital, Dr. Venkata Devabhaktuni, a treating psychiatrist, diagnosed the claimant with bipolar disorder and possible polysubstance abuse. The claimant tested positive for cocaine use, but denied any use within the last month. (R. 711). On April 03, 2007, the claimant returned to Huntsville Hospital; reported drinking heavily on a daily basis; and tested positive for cocaine, benzodiazepine, and opiates. Dr. Kumaramangalam diagnosed the claimant with polysubstance abuse. (R. 940). The claimant continued to visit the MHC approximately monthly from April 12, 2007 through June 17, 2007. (R. 1033-1045).

While incarcerated from July 17, 2007 to February 11, 2008, the claimant received monthly mental health visits for counseling and treatment adjustment. (R. 1065-75). Six weeks before release, on December 08, 2007, the prison psychiatric report notes that the claimant had a good mood, full affect, and stable bipolar disorder. (R. 1064). After the prison released the claimant on February 11, 2008, Dr. John Wicks, a treating psychiatrist, examined the claimant at MHC. Dr. Wicks noted that the claimant "was in no distress and did not manifest symptoms of any major psychiatric disorder." (R. 1048). On June 26, 2008, Dr. Wicks completed a "Medical Source Opinion Form (Mental)" that recorded marked or extreme limitations in every category except memory, where the claimant was moderately limited. Despite answering every other question on the examination, Dr. Wicks failed to answer the question, "If drug and/or alcohol use were to stop, would there be any change in the above stated limitations?" Dr. Wicks did make a note stating "History of ETOH Dependence - no current use;" however, the report does not indicate whether this statement is a clinical diagnosis or merely what the claimant told Dr.

9

Wicks. Even with these marked or extreme psychological limitations, Dr. Wicks reported that the claimant could manage any social security benefits he may receive. (R. 1163-64).

*The ALJ Hearing*

The claimant requested and received a hearing before an ALJ. (R. 83, 92). At the hearing, the claimant testified that he had sharp pain in his lower back. (R. 41). The claimant asserted that the pain was an eight on a scale of one to ten even with medication, affected him every day, and started after he reached, bent, squatted, or lifted. (R. 43-44). When asked why he was not receiving treatment for his back, the claimant explained that he did not have insurance. (R. 43-44). The claimant testified that he spent four to five hours a day in bed because of his pain and suffered from muscle spasms that lasted for approximately an hour. (R. 45). In addition to his back injury, the claimant also testified that he suffered from pain in his right ankle on rainy days if he stood for more than twenty minutes. (R. 46-47). When asked about his physical abilities, the claimant testified that he could walk about fifty yards two or three times a day, sit for thirty to forty-five minutes at a time, stand for fifteen to twenty minutes, and carry five to ten pounds for fifty yards once or twice a day. (R. 52).

The claimant acknowledged that he has pancreatitis as a result of using drugs and alcohol. (R. 47). The claimant testified that he experienced stomach pain on a level of "eight or nine" out of ten for two to three days a week. (R. 49-50). The claimant testified that he had stopped using cocaine and alcohol, but had used it in the past for "pity parties," that is, attempted suicides. (R. 58-60).

A vocational expert, Barbara Ozam, also testified at the hearing. (R. 65). Ms. Ozam testified that a person like the claimant, who could not perform anything above routine sedentary

work, stand for more than twenty minutes, work with the public, or work around alcohol or

drugs, could still work in multiple jobs including as a table worker, inspector, or assembler. (R.

at 63-64). If the assessment were moved from sedentary to light work, Ms. Ozam stated the

claimant could work as a photocopy operator, ticket marker, or mail sorter. (R. at 64). Ms. Ozam

testified that if the claimant were confined to his home for up to two days a week, had to take

regular absences, or was required to lie down for four hours a day he would not be able to

participate in any work activity. (R. 65).

### The ALJ's Decision

On July 23, 2008, the ALJ issued a decision stating the claimant was not disabled under

the Social Security Act. (R. 6). First, the ALJ found that the claimant had not engaged in

substantial gainful activity since December 31, 2005, the amended alleged onset date. Second,

the ALJ found that the claimant had a personality disorder; bipolar disorder; a history of alcohol,

narcotic, and cocaine abuse; a history of chronic pancreatitis; gastroesophageal reflux disease;

and a history of a decompression fracture, all of which qualified as severe impairments. (R. 12).

Third, the ALJ found that while the claimant was abusing drugs or alcohol these

impairments met Medical Listings 12.04 and 12.09. (R. 15). However, the ALJ found that if the

claimant stopped the substance abuse he would not have an impairment or combination of

impairments that met or medically equaled any listed impairment. (R. 16). Fourth, the ALJ found

that if the claimant stopped the substance abuse, the claimant had the residual functional capacity

to perform sedentary work, but could not stand for more than twenty minutes. Additionally, he

could not perform anything beyond routine or repetitive work, have contact with the general

public, or be involved with the sale of alcohol or drugs. (R. 17). The ALJ determined that these

11

restrictions prevented the claimant from performing any past relevant work. (R. 20).

To make the RFC assessment, the ALJ relied on the consultative examination of Dr. Lary, Dr. Murray's treatment notes, treatment notes from the Mental Health Center, and treatment notes from the Alabama Department of Corrections. The ALJ specifically disagreed with the assessments of state disability examiner Beth Jones and treating psychiatrist Dr. Wicks. The ALJ found that Ms. Jones overstated the claimant's abilities because she found that he could perform a reduced range of medium work despite his history of back pain and dysfunction. The ALJ discredited Dr. Wicks's report because it was not representative of the claimant when not abusing drugs or alcohol, conflicted with the notes of other treating physicians, and conflicted with Dr. Wicks's own treatment notes. (R. 19-20).

Fifth, the ALJ found that the claimant could work as a table worker, inspector, or assembler – all jobs that exist in significant numbers in the national economy.  Thus, the ALJ found that the claimant was capable of making successful adjustment to other work and was not disabled as defined by the Social Security Act. (R. 21).

## VI. Discussion

### A. The ALJ had a substantial basis for discrediting the June 27, 2008 report of treating physician Dr. Wicks.

The claimant argues that the ALJ improperly discredited the report of Dr. Wicks, his treating physician who reported that he had marked or extreme limitations.

 The claimant correctly argues that "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436,

1440 (11th Cir. 1997)). However, as in this case, good cause exists if the physician's opinion is not supported by evidence, the evidence supports a contrary finding, the physician's opinion is conclusory, or the physician's opinion is inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

The ALJ articulated sufficient reasons for discrediting this report from Dr. Wicks. First, the ALJ noted that Dr. Wicks's report conflicts with the opinions of other treating physicians at the Alabama Department of Corrections. (R. 20). These physicians established that the claimant is mentally stable when not abusing drugs or alcohol and when properly taking his medication. (R. 1064, 1066). The claimant argues his change in behavior was not caused by sobriety, but rather sedation from a "large amount and dosage of medications." Claimant's Br. 16. However, reports from the Alabama Department of Corrections record the claimant stating that he was "doing well on current meds" and had "good sleep & energy." The report notes that the claimant showed "full affect" and logical thought. (R. 1064). These reports do not corroborate the claimant's allegation that he was simply sedated into good behavior.

Second, the ALJ noted that Dr. Wicks's report also conflicts with the his own earlier treatment notes stating the claimant "was in no distress and did not manifest symptoms of any major psychiatric disorder." (R. 1048). As the Commissioner points out, no record exists of an examination or treatment between this note on February 11, 2008 and Dr. Wicks's report on June 27, 2008. Def.'s Br. 11. The lack of intervening examination not only demonstrates that Dr. Wicks's second report has no basis for differing from his first, but also that its conclusions lack the required clinical findings.

Because Dr. Wicks's report contradicts the opinion of other treating physicians, is

13

inconsistent with his own findings, lacks evidentiary support, and is conclusory, the court finds that the ALJ properly discredited Dr. Wicks's June 27, 2008 report.

**B. The ALJ correctly found that the claimant's alcoholism and substance abuse are factors material to the disability determination.**

The claimant argues that the ALJ incorrectly determined that alcoholism and drug addiction were "contributing factor[s] material to the disability determination," thus, making the claimant not disabled according to the Social Security Act. Claimant's Br. 10-13. First, the claimant argues that the ALJ incorrectly found that he was an alcoholic and drug addict. Second, the claimant argues that he proved that his disabilities would persist even if he stopped abusing drugs or alcohol.

42 U.S.C. § 423(d)(2)(C) (2006) provides, "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be *a contributing factor material to the Commissioner's determination that the individual is disabled*." (emphasis added). Drug addiction or alcoholism is not "a contributing factor material to the determination of disability" if the claimant would still be disabled if he stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(1) (2011). Once the ALJ finds the claimant is an alcoholic or drug addict, the claimant must prove that the addiction is not "a contributing factor material to the determination of disability" by showing that he is still disabled even when not abusing drugs and alcohol. *See Doughty v. Apfel*, 245 F.3d 1274, 1276 (11th Cir. 2001).

**1. Substantial evidence supported the ALJ's finding that the claimant suffered from alcoholism or drug addiction.**

The claimant argues that substantial evidence did not support the ALJ's finding that he is

an alcoholic or drug addict. Specifically, the claimant argues he only used these substances as tools to commit suicide, not as a result of addiction.

"This court reviews the ALJ's decision to determine whether the Commissioner's decision is supported by substantial evidence and the Commissioner applied the correct legal standards." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The Commissioner's factual findings must be supported by substantial evidence. *Doughty*, 245 F.3d at 1278. Because the determination that the claimant is an alcoholic or drug addict is a factual finding, this court reviews the decision for substantial evidentiary support.

Substantial evidence supported the ALJ's decision. The claimant's contention that he only used drugs or alcohol when he was suicidal lacks merit. Although the record does show instances where the claimant specifically mentions using cocaine or alcohol in the context of committing "pity party" suicide, the record is replete with instances of drug or alcohol use not connected with suicide. (*See eg.* R. 57-59). The ALJ specifically mentioned eight examples, mostly from treating physicians, where the claimant was diagnosed with drug abuse or alcoholism. First, Bradford Health Services diagnosed the claimant with alcohol dependence and cocaine abuse on February 18, 2005. Second, when the claimant was hospitalized on July 13, 2005, Dr. Bradford noted he had a history of abusing alcohol, cocaine, and a positive drug screening for cocaine. Third, while at the Huntsville Hospital on January 14, 2006, Dr. Franey diagnosed the claimant with alcohol abuse. Fourth, while at Huntsville Hospital on March 06, 2006, Dr. Wilke diagnosed the claimant with alcohol abuse and substance abuse. When he checked in, the claimant "confessed to heavy alcohol usage for the past two months." (R. 13). Fifth, on August 09, 2006, Dr. McDonald diagnosed the claimant with alcohol dependence

15

during a consultative examination. Sixth, on August 10, 2006, Dr. Lary diagnosed the claimant

with a history of alcoholism during a consultative examination. Seventh, on April 03, 2007, Dr.

Kumaramangalam diagnosed the claimant with polysubstance abuse. Eighth, while at the

Huntsville Hospital on April 3-5, 2007, the claimant reported drinking heavily on a daily basis

and tested positive for cocaine, benzodiazepine, and opiates. (R. 14).

Based on these examples listed in the ALJ's decision, the court finds that the ALJ had a

substantial evidentiary basis for finding that the claimant suffered from alcoholism and drug

addiction. Thus, the burden shifts to the plaintiff to prove his disabilities would continue without

drug or alcohol abuse.

**2. The claimant did not prove his disabilities would persist if he stopped abusing alcohol
and drugs.**

 The claimant presents two arguments to prove his disabilities would continue even

without drugs or alcohol. First, the claimant argues that Dr. McDonald's report of August 09,

2006 proves his disabilities are the result of "his personality features," and the ALJ violated

Listing 12.00(E) by relying on a single visit to Dr. Wicks to contradict this finding. (R. 11, 17).

Second, the claimant argues that Dr. Wicks's report proves his disabilities continue when not

consuming alcohol.

After the ALJ establishes the claimant is an alcoholic or drug addict, "the claimant bears

the burden of proving that his alcoholism or drug addiction is not a contributing factor material to

his disability determination." *Doughty*, 245 F.3d at 1276. The *Doughty* court specifically noted

that the claimant may be the only person with the ability to produce evidence proving his

unintoxicated state. *Id.* Furthermore, the claimant correctly argues that the Social Security

Administration's *Blue Book* requires evaluations of chronic mental impairments to be based on multiple reports over time because one visit may not be representative of the claimant's actual disabilities. *See* Soc. Sec. Admin., *Blue Book* Part A § 12.00 (2008), http://www.ssa.gov/disability/professionals/bluebook.

The claimant fails to prove that his alcoholism and drug addiction are not contributing factors. The claimant argues that Dr. McDonald's report proves his disabilities are not the result of his intoxication because it states: "He is quite depressed and seems to have significant relationship problems *due to his personality features*." (R. 663) (emphasis added). First, this quotation does not indicate if Dr. McDonald believed that both the depression and relationship problems or just the relationship problems were "due to his personality features." Second, even if Dr. McDonald believed that the claimant's depression was "due to his personality features," this statement in no way specifically proved that Dr. McDonald thought this disability would persist, and to what degree, without the claimant's substance abuse. The claimant's "personality features" could possibly include the claimant's addiction. Third, Dr. McDonald's own report contradicts the claimant's interpretation. Before the cited statement, Dr. McDonald noted that "Mr. Robinson's condition should improve significantly if he resumes proper psychiatric care and maintain[s] sobriety." (R. 662). Additionally, almost immediately after the cited statement, Dr. McDonald stated, "He also continues to struggle with his substance abuse." (R. 663).

The claimant argues that the ALJ violated the multiple report requirement of Listing 12.00(E) because he only cited Dr. Wicks's report to contradict Dr. McDonald's report of a chronic mental illness. Claimant's Br. 17. First, the court emphasizes that the claimant bears the burden of proof on this issue. Second, the ALJ did not mention only one source, but specifically

17

cited to the records of the Alabama Department of Corrections, the Mental Health Center, and Dr. Wicks, all physicians or clinics who had a history of treating the claimant. (R. 20). In contrast, the claimant – who bears the burden of proof – would have the court evaluate the nature of his chronic mental impairments based entirely on one line of one report from examining physician Dr. McDonald.

Additionally, the claimant argues that the June 27, 2008 opinion of Dr. Wicks – which recorded marked or extreme limitations – proves his disabilities would persist when not using drugs and alcohol. First, as already discussed, the ALJ properly discredited Dr. Wicks's June 27, 2008 report. *See supra* Part VI.A. Second, even assuming the report were credible, the ALJ noted that this report seems to be a description of the claimant while on drugs and alcohol. (R. 20). Despite answering every other question on the examination, Dr. Wicks specifically did not answer the question, "If drug and/or alcohol use were to stop, would there be any change in the above-stated limitations? If yes, please describe in as much detail as possible, citing clinical findings." Instead, under the question, Dr. Wicks made the notation "History of ETOH Dependence - no current use." (R. 1165)*.*

Based on this analysis, the court finds that the claimant failed to prove his disabilities would continue absent his substance abuse. Thus, because the ALJ correctly found that the claimant was an alcoholic and drug addict and the claimant failed to prove that his disabilities would continue without substance abuse, the court finds that the ALJ properly determined that the claimant's alcoholism and substance abuse are "factors material to the disability determination."

18

**C. The ALJ properly applied the Eleventh Circuit's three-part pain standard.**

The claimant argues that the ALJ did not have substantial evidence to discredit the claimant's testimony of subjective pain under the Eleventh Circuit's pain standard.

In the Eleventh Circuit, an ALJ must apply the three-part pain standard to determine whether a claimant's testimony of pain or other subjective symptoms is credible. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* Testimony which satisfies this standard is sufficient to support a finding of disability; however, the ALJ retains discretion to evaluate whether the pain is disabling. *Id.*

If the claimant meets the first requirement, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of [the] pain" to determine severity in the second and third steps. *See Foote v. Charter*, 67 F.3d 1553, 1561 (11th Cir. 1995); *see also* 20 C.F.R. §§ 404.1529(c) (2011) (requiring an ALJ to evaluate the intensity and persistence of pain). In this evaluation, the ALJ generally consults multiple sources including medical evidence, physician's opinions, daily activities, treatments, and inconsistencies in the evidence or testimony. *See* 20 C.F.R. § 404.1529(c)(2)-(4) (2011). The ALJ may decide not to credit the claimant's testimony only by providing "explicit and adequate reasons for doing so." *Id.*; *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (holding an ALJ may find that testimony is not credible if contradicted by substantial evidence). If the ALJ does not clearly articulate reasons for discrediting testimony about pain, a court must accept the claimant's testimony as true. *See*

19

*Foote*, 67 F.3d at 1561-62; *Holt*, 921 F.2d at 1223.

In this case, the court finds that the ALJ correctly applied the Eleventh Circuit's pain standard and supported his findings with substantial evidence. The ALJ found the claimant met step one because he had two underlying medical conditions, a back injury and pancreatitis. However, at step two the ALJ found that the objective medical evidence did not support the claimant's allegations of severe pain. At step three the ALJ determined that the claimant's impairments could be reasonably expected to produce some pain, but not the alleged severe pain. (R. 18).

The ALJ's decision was supported by substantial evidence. First, the ALJ noted that the claimant's pain and ability testimony conflicted with his daily activities such as shopping, independently caring for his personal needs, cooking, and performing housework. (R. 18). Second, the ALJ noted that the claimant's alleged restrictions were inconsistent with the consultative evaluation of Dr. Lary. While Dr. Lary noted that the claimant could not perform light, medium, or heavy work, he determined the claimant could perform a limited range of sedentary work. Third, and specifically in reference to the claimant's back injury, the ALJ noted that treating physician Dr. Murray reported that the claimant "may return to work on December 01, 2002 without restrictions." Fourth, the ALJ pointed out that while the claimant continues to wear a back brace, and was wearing it at the hearing, the record does not identify the brace as a medical necessity. Fifth, and specifically in reference to the claimant's pancreatitis, the ALJ noted that the condition is aggravated by alcoholism and when the claimant is not consuming alcohol he has "no diet or activity restrictions." (R. 19).

The court finds that these rationales provide substantial evidence to support the ALJ's

decision to discredit the claimant's pain testimony.

## VII. Conclusion

For the reasons stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED. The court will enter a separate order in accordance with this Memorandum Opinion.

DONE and ORDERED this 22nd day of July 2011.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE